VICTOR TALKING MACH. CO. v. THOMAS A. EDISON, Inc.

(Circuit Court of Appeals, Second Circuit. January 11, 1916.)

No. 115.

PATENTS ⬤328—VALIDITY AND INFRINGEMENT.

The Johnson patents No. 814,786 and No. 1,060,550, for talking machine, construed, and *held* not infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Victor Talking Machine Company against Thomas A. Edison, Incorporated. Decree for defendant, and complainant appeals. Affirmed.

The following is the opinion of Learned Hand, District Judge:

Patent 785,362 being withdrawn, I have only to consider patents 814,786 and 1,060,550. The plaintiff urges that the "reorganized" machine infringes claims 16, 23, and 37 of patent 814,786 and claims 39 and 42 of patent 1,060,550. Claim 23 of patent 814,786, if considered verbally, is clearly not applicable. The "bent pivoted tube" is especially designed not "to carry the sound box in substantial alignment with the tapering portion of said arm." Therefore claim 23 may be disregarded at once, because, where so many claims are put into a patent, each element in a given claim must be supposed to be especially necessary to the combination. In such a patent there is little room for latitude of interpretation. In claim 16 the term, "sound tube," used in the claim should be confined to the movable section, 29, which is called a "sound tube" on page 2, lines 49, 50, 64, 70, and 93, and which is used in that sense in a number of the claims. The defendant has no "sound tube," because it has no such element as Johnson's disclosure; the whole organization of its machine being quite different and being derived from another part of the art—that is, from the solid horn art.

If, however, that part of the solid horn which comes above the record be deemed the "sound tube," so that the defendant infringes, then the claim in my judgment presents no patentable novelty over the prior art. I shall assume for the moment, and until I take up claim 37 that the Clark patent, 756,348, and the Lake patent, 1902, British, 785, show a sound tube with an end piece, to which the sound box is rigidly attached, but which itself moves freely upon two axes, vertical and horizontal. The proof of that I shall give later. If so, it was not patentable to give to the sound box that double motion when annexed to a solid horn. Johnson's own patent, 785,363, which was in the office at the same time as the patent in suit, would have been a good reference otherwise upon this very point. Moreover, Johnson's patent, 634,944, shows the horn bent through 90 degrees to meet the sound box with a solid connection. Surely it was not invention to make the straight tube of Clark and Lake into a bent tube like Johnson, 634,944, or to vary the bend into a semicircle, as the defendant has done. In the patent in suit the joint between the sound tube and the semicircular part may well be patentable, but the defendant does not use it, or anything like it. The bend in its tube is a twist in the solid metal, which puts the sound box in the same vertical plane with the horn, when the tube is in a straight line with the horn, but which has no functional significance. At least, I am not willing to attribute invention to that particular feature, and that is the only feature which is new. Therefore I think that claim 16 must be limited to the disclosure as shown, where there is a separated horn of which one part is a sound tube in the sense mentioned in the patent.

Claim 37 contains an element described as "a hollow sound conducting arm movable in a plane parallel with" the record support. The phrase "sound

conducting arm," or "tube," is used in the patent interchangeably with "sound tube" to mean the element, 29, distinct from the horn proper (page 2, lines 27, 41), but it may be (page 1, line 18) that this use is not throughout as consistent as in the case of the "sound tube." However that may be as mere matter of terminology, the element must be limited to the organization disclosed, or it is invalid, because, if the element include the whole of a solid horn, as it must to cover the defendant's device, it is invalid under Clark, supra, and Lake, supra. Here there is a hollow sound conducting arm in the sense of a horn which moves parallel with the record. The sound box has a vertical movement about the horizontal pivot, *i*, which permits the box to move from or to the record independently of the horn, sufficiently to remove the stylus. However, the plaintiff urges that, as the Clark and Lake patents are clearly for a feed machine, the sound box cannot, therefore, move freely laterally across the record, as the defendant's does and as the plaintiff's does. That in all feed machines there must be some play, which permits a slight amount of accommodation to the grooves of the record, all agree. The whole phonograph art shows this; but it is urged with some plausibility that such slight accommodation as this should not be confounded with a deliberate adaptation for tracking through the guidance of the record alone. Hence it is insisted that patents like Von Madaler, 1899, British, 23,497, and the MacDonald patents, are not applicable, and that there must be understood in the patent in suit a machine made like the original Berliner machine, where the stylus drifts freely in a lateral plane.

The organization of Clark's machine leaves no doubt in my mind that a lateral movement was contemplated about the vertical pivot, *j*, within the sleeve, *m*. Figures 5 and 9 show how this was to be done; the pin, *j*, being that on the upper end of which the guide arm, *D*, was fastened. The disclosure (page 1, lines 45–70) leaves no doubt as to the patentee's purposes; the phrase "universal joint," line 60, being wholly unambiguous. Just how much play was permitted depended upon the relative lengths of *m* and *k* within the joint and of their difference in caliber, but the degree of motion is not a patentable detail. The fact that the defendant's universal joint is a ball and socket is irrelevant.

Lake's patent, 1902, British, 785, illustrates precisely the same thing and quite as clearly, not, as the plaintiff thinks, confusedly. Thus the patentee says (page 5, lines 1–3) that the device "permits a very slight motion in the horizontal direction to the tubes of the diaphragm as arranged in Figures 15 and 16. This horizontal movement is just sufficient to permit the ball to follow smoothly the path of the spiral groove." All the defendant has done is to allow this play in a "horizontal direction" to be large enough "to permit the ball [stylus] to follow smoothly the path of the spiral groove." The fact that it allows the stylus to follow a spiral groove, which was of altogether different threading from that which the feed was meant to accommodate, cannot have any bearing upon patentability. The means are shown, and all that need be done is to proportion the parts *m* and *k*, so as to allow enough play to accommodate for whatever the total difference is between the feed and the record. No patent can reside in the mere size of these parts. Unless, therefore, claim 37 is limited to the disclosure, it will meet these two patents and it will be invalid. Therefore I find no infringement of patent 714,856.

Patent 1,060,550 was in the office more than 10 years, and the claims in suit were interjected into the application after the patent had been once allowed, and after the defendant's machine had appeared upon the market. Just how it can happen that a patentee can hold an invention secreted for so long, and can then adapt it so as to cover the subsequent art, does not appear. The result is, assuming that the claims do not constitute a new invention, that the patentee has got from 8 to 9 added years to his monopoly from the time when he would otherwise have been obliged to leave the art unhampered. To let him reserve his patent till the trade independently develops, and then to pounce upon it for a full term, would seem to violate the conditions upon which his grant depends, and to convert the system into a mere means of checking industry. This is especially true where, as here, a fundamental patent like the Berliner protected the whole invention until 1912. The case certainly suggests a purpose to monopolize that invention still further by re-

serving in the Patent Office patents upon other similar machines known long before. Whether this be true or not, the practice is so obviously mischievous that the courts should discourage it as much as possible, as well as the practice which permits 48 claims upon a simple and perfectly obvious machine like this. Such claims violate the very purpose of any claims at all, which is to define the forbidden field. In such a waste of abstract verbiage it is quite impossible to find any guide. It takes the scholastic ingenuity of a St. Thomas with the patience of a yogi to decipher their meaning, as they stand.

Claim 39 is certainly not infringed because the tapering sound amplifier has no "free swinging movement." On the contrary, it is rigidly controlled during its operation by the feed mechanism. The disclosure is of a freely floating horn, and it is only a literal reading of the claim which can cover any part of the "reorganized" machine but the little adjunct tube which carries the sound box, about which more in a moment. If, however, we disregard the limitation of the claim, and consider it as covering the tapering portion, we find that portion anticipated by Jeffries, 1900, British, 16,897, Von Madaler, 1899, British, 23,497, and Lake, supra, in all of which a tapering horn moves exactly as the tapering part of the defendant's horn moves in the "reorganized" machine and has a sound box which can be raised up and down into and out of co-operation with the record. Therefore the claim cannot safely be allowed an expansion which it would, as matter of interpretation, be absurd to permit; that is, to disregard the freely swinging movement. If, on the other hand, one were to disregard the other element of the claim—i. e., the taper in the arm—and apply it to the adjunct tube, which swings freely, one would get no further than Lake, supra, which, as I have shown at length, has a free swing in all directions, dependent in amount upon the proportion of the elements, $m$ and $k$. Therefore, even with a latitude of interpretation which would be wholly unwarranted in view of patent as a whole, the claim cannot be regarded as infringed.

Claim 42 differs, in that the element of free swing is eliminated and the condition of parallel motion is substituted. This difference makes the claim more verbally applicable to the defendant's "reorganized" machine than claim 39, though here, too, the disclosure must be disregarded altogether. If, however, the claim be interpreted to cover a feed control tapering horn, then Von Madaler, supra, and Lake, supra, at once become good references because the tapering part of the defendant's horn is under feed control like them. If, again, as in claim 39, the taper of the horn be disregarded, notwithstanding the words of the claim, and it apply to the adjunct tube, then Lake, supra is as good a reference as upon claim 39. The only change in consideration of these two claims is that Jeffries supra, does not apply to claim 42.

It hardly seems necessary to consider the defendant's "normal" machine, except to note how far beyond any possible scope of the disclosure the plaintiff is willing to press the literal interpretation of the claims.

Blagden, 671,305, does not seem to me to be apposite to this patent, because the member which moves laterally parallel to the record is not the tapering horn. This patent is derived from the broken horn art, not from the solid horn. Edison's original patent does not seem to me very relevant either to claim 39 or 42. In all this art there was no room for any great pioneer invention in the mere relations of the horn to the sound box or its connections. The great invention was the floating of the stylus upon the face of the record, and that was Berliner's discovery. A mere glance at the defendant's machine shows that its original organization proceeded upon wholly different lines. When the Berliner patent expired, I see no reason in law or morals why they should not have availed themselves of an attachment of the floating sound box type to play Berliner records in the Berliner fashion. They, with the rest of the world, were the beneficiaries of that disclosure. While the floating sound box was somewhat crudely devised by Berliner, the pregnant idea became public, and I cannot see how the defendant has borrowed anything from the plaintiff, except the semicircular twist in its tube. However, amid the wilderness of words I have tried to find and tread a path of logic, though the simpler way might have been to rest the case upon broader lines.

The bill is dismissed, with costs.

Frederick A. Blount and Hector T. Fenton, both of Philadelphia, Pa., for appellant.

Gifford & Bull, of New York City (J. E. Bull, of New York City, of counsel), for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

PER CURIAM. Decree affirmed, with costs, on opinion of the District Judge.

---

TELESCOPE COT BED CO. v. GOLD MEDAL CAMP FURNITURE MFG. CO.

(Circuit Court of Appeals, Second Circuit. January 11, 1916.)

No. 92.

1. PATENTS ⊜⇒328—VALIDITY AND INFRINGEMENT—FOLDING COT.
    The Herman patent, No. 793,723, for a folding cot, was not anticipated and discloses invention, the structure, although simple, having superior utility; also *held* infringed.

2. PATENTS ⊜⇒253—INFRINGEMENT.
    Infringement may be found, although the infringing device does not obtain the advantages of the patented invention to the fullest extent.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 362; Dec. Dig. ⊜⇒253.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the Telescope Cot Bed Company against the Gold Medal Camp Furniture Manufacturing Company. Decree for complainant, and defendant appeals. Affirmed.

This cause comes here upon appeal from a decree finding validity and infringement of United States letters patent No. 793,723, issued July 4, 1905, to R. L. Herman for a folding cot.

Almon C. Kellogg, of New York City (E. H. Bottum and F. E. Dennett, both of Milwaukee, Wis., of counsel), for appellant.

Kenyon & Kenyon, of New York City (A. D. Kenyon, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. [1] The patented structure is simple; it comprises a plurality of legs, which are connected in pairs by pivots, so that they can be closed to lie together or open to stand like the letter X. These legs are disposed or arranged transversely of the length of the cot, and the legs or horses are united lengthwise of the cot and on both sides of the cot by so-called braces, which are pivoted in pairs like the legs, so that they can be closed together or can be opened into the shape of the letter X. This construction provides a framework for a cot which can be either collapsed or opened in both the

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes