AMERICAN GRAPHOPHONE CO. v. GIMBEL BROS.

(Circuit Court of Appeals, Second Circuit.    February 20, 1917.)

No. 156.

1. PATENTS ⬯⇒328—INVENTION—TALKING MACHINE.

The Emerson patent, No. 777,615, for a convertible sound box, and the Kraemer patent, No. 899,874, for a talking machine, both relating to means for changing the position of the sound box of a talking machine, *held* void for lack of invention, in view of the prior art.

2. PATENTS ⬯⇒328—VALIDITY AND INFRINGEMENT—TALKING MACHINE.

The Macdonald patent, No. 957,694, for a disk sound-reproducing machine, if valid, must be narrowly construed, and, as so construed, *held* not infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the American Graphophone Company against Gimbel Bros.  Decree for defendant (234 Fed. 361), and complainant appeals.  Affirmed.

Appeal by plaintiff from decree in equity, entered in the District Court, dismissing bill on sundry patents below set forth:

(1) No. 777,615, dated December 13, 1904, to Victor H. Emerson, for a "convertible sound box."  Claims relied on are as follows:

"3. The combination of a sound box and means for supporting it interchangeably with its diaphragm either parallel to or at right angles to the surface of the sound record."

"5. The combination with a sound box and its diaphragm of supporting means therefor that hold said diaphragm in operative position for a laterally vibrating stylus, said means being adjustable to present said diaphragm in another position operative for a vertically vibrating stylus."

(2) No. 899,874, dated September 29, 1908, to Thomas Kraemer, for a "talking machine."  All the claims were relied on.  Those numbered 1, 2, 3, and 6 describe the apparatus in one method, and 4, 5, and 7 in another.  The two forms below given are sufficient for illustration:

"1. In a talking machine, a sound box having a diaphragm, and a tubular connection thereto for carrying sound, said connection having a joint therein permitting movement of the sound box to either of two operative positions; a single stylus being adapted to vibrate the diaphragm in either of said positions and said stylus projecting in substantially the same direction from the sound box in both of said positions, substantially as set forth."

"4. In a talking machine, a sound-conveying tube, a sound box having a single stylus, and two telescoping tubular pieces, one on said tube and the other on said box, permitting movement of the sound box relatively to the tube to either of two operative positions in both of which said stylus projects in substantially the same direction from the sound box, substantially as set forth."

(3) No. 957,694, dated May 10, 1910, to Thomas H. Macdonald for a "disk sound-reproducing machine"; claims relied on, 3, 9, and 12, of which the most general is:

"3. The combination of a swinging arm carrying the reproducer at one end, a stationary arm, a ring mounted on said stationary arm to turn in a horizontal

⬯⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

plane and trunnions connecting the ring to the swinging arm to permit said arm to turn in a vertical plane."

C. A. L. Massie, and Ralph L. Scott, both of New York City, for appellant.

Charles N. Butler, of Philadelphia, Pa., for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The claims in suit are very small efforts toward the furtherance of a business long since so crowded with minor patents that claims such as these before us are by common knowledge limited to a narrow construction. Emerson correctly named his device: It is a sound box, of the well-known kind, for which he claimed nothing, and which he made convertible, by mounting it on a shaft, revoluble in a sleeve, and fastened at any desired position in its revolution by a set screw. By this means he could (by a change of stylus) use the same sound box, in one position for a record with vertical, and in another position for a record with lateral, sound grooves or undulations.

Kraemer did not invent a "talking machine." His patent relates to nothing but means for effecting the same twist of the sound box that Emerson accomplished by shaft and sleeve. This patentee, however, had to deal with a box mounted on a tone arm, which is hollow; wherefore he separated the end of the tone arm nearest the disc into two pieces, put the sound box on the outer piece, and made it revoluble, by fitting one piece into the other after the manner of a stovepipe. This stovepipe movement is what he means by the word "telescoping" in claims 4, 5, and 7; but there is no such capacity for elongation as is ordinarily suggested by the word used.

[2] Macdonald's patent does not disclose a machine for reproducing sound, but only a method of arranging the tone arm, so that it may swing horizontally as the stylus transversely crosses the flat circular record in the manner long ago shown by Berliner, and at the same time have enough vertical play to avoid or minimize the effect on the diaphragm of unintended or intended irregularities of tablet surface. Further, he wished to do this with a good joint or meeting-place between the moving tone arm and the fixed amplifying horn.

Therefore he claims a swinging arm (tone arm), with the reproducer (sound box and stylus) at one end, a stationary arm (any rigid support affixed to the machine frame-work) and the tone arm fastened to a ring on the under side of the support, by "trunnions" (two screws not driven home), so that the arm and ring revolve together horizontally and the partially driven screws permit a slight vertical play. The amplifying horn is on top of the fixed support, and the looseness of the connection cured (so as to get a closed passage for the sound waves prior to their emergence from the horn) by a "nonfluid lubricant"; i. e., petroleum jelly.

Considering these patents as a group, it would not be easy to find better illustrations of that straining of the patent laws, condemned in Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438; and they invite to the conclusion that, even though no prior pat-

ent may constitute distinct anticipation, such attempted additions to the sum of human knowledge amount to no more than a mechanic's response to the demands of commercial business, and should not be dignified with the name of invention. Western Electric Co. v. Rochester Telephone Co., 145 Fed. 41, 75.C. C. A. 313.

Emerson's sleeved shaft and set screw is about as old a mechanical adjustment as can be found. Berliner (No. 564,586), used it to adjust a gramophone stylus, and while we doubt that this patent amounts to anticipation, we are fully convinced that after Berliner there was no patentable invention in what Emerson did, even assuming that, if no one had ever before adjusted any part of a talking machine by this means, it would amount to invention so to do.

Kraemer's patent is an interesting study in the art of making much out of little. Examination of the typical claims quoted shows that the only novelty in the first is "said connection having a joint," and in the fourth "two telescoping tubular pieces," which is but an inaccurate description of the stove-pipe joint.

The very best that can be urged for this patent is that to transfer to or use in the phonograph art the ancient revoluble fastening mentioned constituted invention. Oftentimes such transferred use or adaptation of the oldest devices is invention of a very high kind, if such new use is productive of a new result in a new field of human effort. But a mechanical detail such as the one under consideration had, and could have, no effect at all on sound reproduction. No matter which way the sound box is twisted, the art in question is unaffected; sound box, tone arm, stylus, etc., are operating as usual, and the adjustment of the patent is entitled to no higher favor than if applied to any other contrivance. The patent is void of invention.

Macdonald's claims are all for combinations, and that (if anything) which enables the combined parts to coact in production of a new and desirable result is the "trunnion" device, permitting vertical movement in the tone arm, without interfering with horizontal movement. The possibilities of invention in this narrow field were much circumscribed by Jetter (No. 750,977), who disclosed trunnions for Macdonald's purpose, and accomplished the horizontal swing by means different only in detail.

If the claims of this patent are taken literally and broadly, they are invalid, as disclosing no patentable invention over Jetter, and as covering aggregations of simple mechanical details not productive of a coordinated result. If narrowly confined to the device specified (and no claims ought to have been allowed for more), the defendant does not infringe. On this last question of fact we need not dwell. It concerns this particular defendant only, and was very amply treated in the lower court.

Decree affirmed, with costs.