### VICTOR TALKING MACH. CO. v. CHENEY TALKING MACH. CO. *

(District Court, W. D. Michigan, S. D. August 5, 1920. On Rehearing,

November 24, 1920.)

1. Patents ⬩⬩⬩328—814,786, for improvement in talking machines, held valid and infringed.

The Johnson patent, No. 814,786, for improvement in talking machines, claim 42, relating to the structure and means of attachment of the amplifying horn, *held* valid and infringed.

2. Patents ⬩⬩⬩328—814,848, for amplifying horn for talking machines, held valid, but not infringed.

The Johnson patent, No. 814,848, for an amplifying horn for talking machines, claims 7 and 11, *held* valid, but not infringed.

3. Patents ⬩⬩⬩289—Discontinuance of suit without prejudice held not laches.

Dismissal without prejudice of a suit for infringement of patents in 1917 owing to the abnormal conditions and the pressure of other business in the federal courts *held* not such laches as to preclude renewal of the suit at a later time.

In Equity. Suit by the Victor Talking Machine Company against the Cheney Talking Machine Company. Decree for complainant on one cause of action, and for defendant on the second.

Kenyon & Kenyon, of New York City, and Knappen, Uhl & Bryant, of Grand Rapids, Mich., for plaintiff.

George L. Wilkinson, of Chicago, Ill., and Travis, Merrick, Warner & Johnson, of Grand Rapids, Mich., for defendant.

SESSIONS, District Judge. This suit is for infringement of two patents, No. 814,786 and No. 814,848, both issued March 13, 1906, to the plaintiff as the assignee of the inventor, Eldridge R. Johnson, also president of the plaintiff company. The original application was filed

---

⬩⬩⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Decree modified 276 Fed. ——.

February 12, 1903, and later was divided, the second application having been filed February 9, 1904. The first patent is for improvements in talking machines and the second for improvements in amplifying horns. Claim 42 of patent No. 814,786 and claims 7 and 11 of patent No. 814,848 are here in issue and are as follows:

"42. A talking machine, comprising a tapering sound conveyer, means for attaching sound-reproducing means to the small end thereof, and horn-coupling and supporting means with which the other end of said conveyer is movably connected."

"7. An amplifying horn, comprising a continuously tapering tube having a joint to allow a movement of one end of said horn in relation to the other, said horn being supported at said joint."

"11. An amplifying horn, comprising a tapering curved tube, said tube being pivoted on a substantially vertical axis to allow a horizontal movement of the smaller end of said tube, the curved portion of said horn connecting sections thereof lying in substantially parallel planes, said axis passing through or adjacent said curved portion."

The defenses relied upon are: (1) That the claims declared upon are invalid for want of invention; (2) noninfringement; and (3) laches.

[1] 1. *Validity.*—The gist and substance of Johnson's invention (described, defined, and embodied in the patents and the claims here in issue) consisted of the production of a talking machine having an amplifying horn tapered or flared outwardly from its connection with the sound box, curved or bent upon itself in the form of the letter U and so joined and supported as to permit movement of the inner and smaller section thereof independently of the outer and larger section and thus to relieve the needle or stylus of the burden, weight, and inertia of the heavier and larger part of the horn. The invention of the patents marked a distinct and substantial advance over the prior art. Before Johnson's discovery, amplifying horns of talking machines which tapered or flared from a point at or near the connection with the sound box were constructed either in a single piece or in parts rigidly connected and were movable only as a whole upon or across the record disc. The earlier machines were cumbersome, unwieldy, and inconvenient, and, by their weight and inertia, cast a heavy burden upon the needle or stylus. Talking machines in which the amplifying horn was located at a distance from the sound box and connected therewith by a sound conveyer of constant diameter were admittedly inferior in both volume and quality of tone reproduced. The utility of the invention, both as a commercial product and an acoustical achievement was at once recognized. Its success has been marvelous. In this connection it is to be noted that, while probably the inventor did not anticipate such result, his invention has made possible the modern inclosed or cabinet talking machine. These patents have been held valid in the courts of this country and England in both contested and pro confesso cases. In this suit nothing new has been presented which tends to destroy or modify the force and reasoning of the earlier decisions.

2. *Infringement.*—Claim 42 reads definitely, specifically, and literally upon defendant's talking machine. The "tone arm" or "sound conveyer" of defendant's machine is tapering, its small end is attached to

and connected with the sound box or reproducer by a mechanical device, and its large end is movably connected with the structure by which it is supported and by which it is coupled to the amplifying horn proper. While defendant's tone arm or sound conveyer is composed of short octagonal sections, each of which has parallel sides and is straight, yet each section is larger than the preceding one, and the assembled sections constitute a tapering structure which is the exact mechanical, if not acoustical, equivalent of a conical sound conveyer. The contention of the defendant that the means for attaching the sound reproducer to the small end of the sound conveyer must be confined and limited to the "gooseneck" connection shown in the drawings and described in the specification of the patent is without merit. There is nothing contained in the drawings, specification, or history of the patent which requires such limitation. This contention is also negatived by the fact that the "gooseneck" connection is itself made the basis of other claims of the patents. The fact that the amplifying horn of defendant's structure for a considerable distance from the larger end of the tone arm is not tapered is quite immaterial. Claim 42 does not call for a horn tapered in its entire length. Nor is it material whether the amplifying horn is supported by the top of the cabinet or by the bracket of the preferred form shown in the drawings of the patent. In either case the horn coupling and supporting device is located at the larger end of the tone arm or sound conveyer, which is movably connected therewith, and so meets the requirements of this claim.

[2] Claim 7 calls for "an amplifying horn, comprising a continuously tapering tube," etc. By no stretch of construction can defendant's amplifying horn, viewed as a unitary structure, be regarded as "a continuously tapering tube." The tone arm portion of the horn composed of octagonal straight sections, and that portion composed of the so-called orchestral sections may fairly be said to be tapering within the purview and meaning of this claim, but that portion of the tube lying between the tone arm and the orchestral sections, which is approximately of the same length as the tone arm itself, is of constant and slightly less diameter than the larger end of the tone arm. Such a tube cannot be said to be continuously tapering within any definition of the term. A voluntary limitation of this character is binding upon the patentee and those claiming under him. D'Arcy Spring Co. v. Marshall Ventilated Mattress Co. (C. C. A. 6) 259 Fed. 236, 170 C. C. A. 304.

It is also clear that claim 11 is not infringed. This claim calls for "a tapering curved tube, * * * the curved portion of said horn connecting sections thereof lying in substantially parallel planes." The connecting portion of the tube of defendant's machine is not tapered and is not curved. The lower turn or bend of the tube is at the junction of two straight sections and is abrupt and forms a right angle. There is no evidence tending to indicate the adoption of this form of sound conveying tube for the purpose of avoiding infringement. The designer of defendant's machine, who is both a noted and accomplished musician and has had long experience in the construc-

tion of musical instruments, testifies that this form of construction was adopted by him after many experiments which led him to believe that the quality of the tones reproduced was greatly improved thereby. The so-called "mechanical throat" of defendant's amplifying horn is the subject of patent No. 1,170,801, granted to Cheney February 8, 1916.

If the question of infringement of claims 7 and 11 were otherwise doubtful, all doubt is removed by an examination of the specifications of the patents in suit, from which it appears that the curvature and continuous taper of the sound-conveying tube of the amplifying horn are prominent and basic features and elements of the invention. The patentee says:

"By locating the small end of the horn in this manner so that the sound-conducting tube or horn flares outwardly practically from the sound box, I have found that it allows the sound waves to advance with a regular, steady, and natural increase in their wave fronts in a manner somewhat similar to that of the ordinary musical instruments, thus obviating the well-known disadvantages due to long passages of small and practically constant diameter. It is also desirable to avoid abrupt turns in the sound-conducting tube or passage.

"It is therefore the object of my invention to provide a talking machine with an amplifying horn meeting these requirements. * * *

"It is further to be noted that I have avoided to the greatest degree any abrupt turns. * * * I have produced, in effect, a sectional horn tapering from end to end."

"The object of this form of my invention is to provide an amplifying horn * * * of such a character that the same will have all the material advantages of a single horn connected directly to the sound box, but without having the disadvantages due to long passages of small and practically constant diameter, to the weight of the bell portion of the amplifying horn, and to abrupt turns in connecting tubes."

"The fact that all portions of the conducting tube or horn are tapered allows the sound waves to advance with a regular and natural increase in their wave fronts in a manner similar to that of ordinary musical instruments, obviating the disadvantages due to long passages of small and practically constant diameter having abrupt turns."

[3] 3. *Laches.*—Upon this subject little need be said. A former suit by the same plaintiff against the same defendant for infringement of the same patents was begun in November, 1915, in the District Court for the Northern District of Illinois. In March, 1917, after proofs had been taken and the case had been made ready for hearing, upon motion of plaintiff and with the consent of defendant, the suit was dismissed without prejudice and upon condition, imposed for the benefit of both plaintiff and defendant, that the testimony theretofore taken might be used in any subsequent suit between the same parties. In the present suit defendant has taken full advantage of the condition so imposed. The proofs show and courts will take judicial notice of the extraordinary and abnormal conditions which existed in this country and in the world at large from the spring of 1917 to the spring of 1919, and, in a lesser degree, to the present time. Litigation of this character was frowned upon by public officials, was discouraged by the courts, and, as far as possible, was avoided by every one. Under these circumstances, it cannot be said that plaintiff has been guilty of

such laches as to preclude it from asserting its rights and prosecuting suits for trespasses thereon.

A decree will be entered finding claims 7 and 11 of patent No. 814,848 valid, but not infringed, and claim 42 of patent No. 814,-786 valid and infringed, granting an injunction; directing an accounting, and referring the case to John S. Lawrence, master in chancery, for such accounting. Neither party will recover costs.

## On Rehearing.

Cannevel's invention, as indicated by the title, illustrated by the drawings, described in the specification and defined in the single claim of his French patent, No. 307,593, resided in and related to the "sound box," and not to any part of the amplifying horn of a talking machine. So far as appears, he had no conception of Johnson's two-part, U-shaped, tapering amplifying horn and its resultant advantages. His sole consideration was the avoidance of restriction or choking in the "neck" or short connection between the diaphragm and the straight megaphone horn of the prior art. At most, his device corresponded to the single element of the combination of claim 42 of patent No. 814,786 described as "means for attaching sound reproducing means to the small end" of the tapering tone arm part of the amplifying horn.

The former decree in this case will stand as the decree upon rehearing.