**VICTOR TALKING MACHINE CO. v. JOHN WANAMAKER, NEW YORK.**

(District Court, S. D. New York. January 4, 1921.)

1. Patents ⬅==328—814,786, claims 2 and 42, and 814,848, claims 7 and 11, for a talking machine horn, held infringed.

The Johnson patents, Nos. 814,786, claims 2 and 42, and 814,848, claims 7 and 11, which cover a talking machine, one element of which was a tapering tone arm, *held* infringed by tone arms which were continuously tapering, except for a few inches next to the sound box and a few inches further along the tube of the horn.

2. Patents ⬅==49—Commercial success held to show utility, notwithstanding contrary expert testimony.

The testimony of complainant's expert, to the effect that the ordinary hearer could not distinguish between the sounds from a tapering tone arm and those from one with parallel sides, is not sufficient to defeat a patent covering the tapering tone arm for want of utility, where the tapered tone arm achieved commercial success as soon as it was put on the market, and the nontapering tone arm was apparently abandoned.

3. Patents ⬅==36—Evidence held not to show alleged prior machine was reduced to successful practice.

In a suit for infringement of a patent, evidence *held* not to show that a machine embodying the invention, constructed before complainant conceived the idea was a successful reduction to practice.

4. Patents ⬅==328—814,786, claims 2 and 42, and 814,848, claims 7 and 11, for talking machine improvements, held not anticipated.

The Johnson patents, Nos. 814,786, claims 2 and 42, and 814,848, claims 7 and 11, for talking machines and horns, the novel feature of which was a tapering tone arm, *held* not anticipated.

---

⬅==For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Patents** ⊛➔328—814,786, claim 36, held invalid for want of invention.

The Johnson patent, No. 814,786, claim 36, for improvements in talking machines, which was not limited, as were other claims of the same patent, to machines having a tapering tone arm, *held* invalid for want of invention.

In Equity. Suit for infringement of patents by the Victor Talking Machine Company against John Wanamaker, New York. Decree rendered for complainant, except as to one claim.

Kenyon & Kenyon, of New York City (William Houston Kenyon, of New York City, John D. Myers, of Camden, N. J., and Theodore S. Kenyon, of New York City, of counsel), for complainant.

Dunn, Goodlett, Massie & Scott, of New York City (C. A. L. Massie and Ralph L. Scott, both of New York City, of counsel), for defendant.

AUGUSTUS N. HAND, District Judge. This is a suit for infringement of letters patent Nos. 814,786 and 814,848. The application for each patent was filed February 12, 1903, and the patents were each issued on March 13, 1906. The claims at issue are 2, 36, and 42, of patent No. 814,786, and 7 and 11 of patent No. 814,848. These claims are as follows:

Of No. 814,786:

"2. In a talking machine, an amplifying horn proper, a record support, a tapering sound tube, movable, independent of the amplifying horn proper and supported to move in a given plane parallel with said record support, a sound box mounted upon and communicating with the small end of said tube and movable independently thereof toward and away from the record support, said horn and tube communicating, and supporting means at the communicating portion of said horn and tube."

"36. In a talking machine, a record support, a hollow sound-conducting arm movable in a given plane parallel with said support, and a sound box mounted upon, communicating with, and movable independently of said arm, toward and away from the record support; said sound box being movable upwardly and to the other side of its point of support, whereby it may be supported in an inoperative position by contact with said arm or a portion thereof."

"42. A talking machine, comprising a tapering round conveyor, means for attaching sound-reproducing means to the small end thereof, and horn coupling and supporting means with which the other end of said conveyor is movably connected."

Of No. 814,848:

"7. An amplifying horn, comprising a continuously tapering tube having a joint to allow a movement of one end of said horn in relation to the other, said horn being supported at said joint."

"11. An amplifying horn, comprising a tapering curved tube, said tube being pivoted on a substantially vertical axis to allow a horizontal movement of the smaller end of said tube, the curved portion of said horn connecting sections thereof lying in substantially parallel planes, said axis passing through or adjacent said curved portion."

[1] I shall first allude to the question of infringement. It was held by Warringon, J., in the case of Gramophone Company, Ltd., v. Ruhl, heard in the English Chancery Division, that a tone arm which was not substantially tapering did not come within the claims of the

⊛➔For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

British patent, that seem to have been identical with those under consideration. But it is stated that the tone arm of the defendant in that case, while smaller in the area where it joined the sound box than it was where it joined the upper part of the horn, attained the difference by a sudden enlargement. A diagram of that tone arm is shown in the opinion of the Court of Appeals, which likewise held there was no infringement.

Judge Sessions, in the case of Victor Talking Machine v. Cheney Talking Machine Co., 275 Fed. 444, decided August 5, 1920, held that the tone arm of the defendant in that case was tapering, and did infringe claim 42 of patent No. 814,786, but that the horn as a whole did not infringe claim 7 or 11 of patent No. 814,848, because it was neither continuously tapering nor had it a tapering curved tube. He said:

"That portion of the tube lying between the tone arm and the orchestral sections, which is approximately of the same length as the tone arm itself, is of constant and slightly less diameter than the larger end of the tone arm."

Evidently the variation from a continuous taper was far greater than in the horn and tone arm of the defendant in suit, and the tube of the Cheney machine may be regarded, not as curved, but with rectangular joints.

The British Court of Appeals in passing on this very question in the case of Gramaphone & Typewriter, Ltd., v. Ullmann, held that unsubstantial variations in continuous tapering would not avoid infringement, and Judge Learned Hand reached the same conclusion in his opinion filed January 14, 1913, in the case of Victor Talking Machine v. Hoschke.

None of the cases have held that so small a deviation from a continuous taper as the 4 to 5 inches of tone arm next the sound box, and the 3¼ inches farther along the tube of defendant's horn, is a sufficient variance to avoid the claim in suit. I find a clear infringement, and regard the only real question as that of validity.

[2] The records before Judge Learned Hand in the Lindstrom and Hoschke Cases, and before Judge Sessions in the recent Cheney Case, were practically the same as that now presented except for the Winne alleged prior use, the Miller patent, and the Columbia taper tone arm. There is, however, the significant further addition to the present record, consisting of the testimony of complainant's own expert to the effect that the ordinary hearer could not distinguish between the sounds from a tapered tone arm and those from one with parallel sides. Undoubtedly the complainant's expert, Mr. Hunter, insisted that careful experiments would show a superiority of tone in a machine having a tapering tone arm. The evidence of the practical abandonment of the first Johnson machine having a tone arm with parallel walls, and the immediate success in the trade of the later form of instrument with a tapering arm, is a tribute to the utility of the talking machine described in the patents in suit. This argument from commercial success has been enough to satisfy Judge Learned Hand, Judge Sessions, and at least one, and perhaps two, English Courts of Appeal that a tapering tone arm, in combination with the other elements present in the

claims under consideration, was sufficiently novel and useful to be patentable.

I doubt the conclusion of Justice Warrington in the case of Gramophone Co. v. Ruhl, supra, to the effect that an improvement in tone which can only be detected by trained experts does not involve an advantage to the public which justifies a patent. In the first place, even if only well-trained musicians could detect the advantage, I can see no reason for saying that it is not useful. Furthermore, I think it possible that even the average man may have a real preference for sounds which he has not the training or concentration consciously to compare with those less pleasing. The unanimous opinion of so many judges, as well as the commercial success of the tapering tone arm as soon as it was put on the market, and the apparent abandonment of the nontapering tone arm, are most persuasive. The point is a close one, but I am of the opinion that the results achieved by the Johnson device in suit should outweigh the evidence of some experts that a tapering tone arm affords no advantage, and even the admission of Mr. Hunter that the superiority of its tone cannot readily be detected. I find no reference in the patents which seem to have been before the courts in former litigations which literally meets the combination described in the patents in suit, and agree with the judges who have heretofore passed on the question that the patent is valid, so far as the art is concerned that they appear to have had before them in the prior litigations.

[3] There remains the consideration of the new prior art. I think the construction of slot machines by Abner Tisdell prior to any date of invention claimed by Johnson is established by a number of witnesses who impressed me as credible. I do not understand it to be disputed that Abner Tisdell came to No. 1013½ Gates avenue, Brooklyn, about March, 1900. There seems to be no doubt that Tisdel constructed a 12-record machine with a tapering tone arm during that year, or the early part of the next; but these events happened about 20 years ago, work was done on the machines covering a period of a number of years, and Winne, for whom they were made by Abner Tisdell, testified that the latter, in 1900, was at 1013½ Gates avenue, "doing work for me building parts of slot machines, experimental work." Record, p. 376. In 1915 Winne testified as follows about the first 12-record machine:

"* * * We saw certain things were faulty. I could not state exactly how long we worked on these improvements, but I would say it was at least two, if not three, years, after this first machine was constructed, that we continued the building of these machines." Record, pp. 414, 415.

Winne then added that it would be pretty hard to tell then what things they found faulty, and that they worked on improvements at least two, if not three, years after the first machine was made. Record, p. 414. At another place Winne said the defects were "just the coin mechanism." Record, p. 380.

Lather, who worked on the machines both at the Gates avenue and Myrtle avenue shops of Abner Tisdell, testified, in 1915, that the first 12-record machine was a sort of experiment, and was not a success for

the purpose of an automatic slot machine (Record, p. 431), and added that it was 4 or 5 years later that the other machines were constructed. He also said that the 12-record machine was a secret before it was completed. Record, p. 433.

I think such evidence as this from a man who was helping Abner Tisdell develop the slot machines shows a failure to comply with the well-established rule that a prior use must be established by clear testimony and beyond a reasonable doubt. I think the witnesses were reputable and truthful, but lack of clear documentary evidence, or physical exhibits showing date of reduction to practice, leaves the question whether the Tisdell conception was reduced to successful practice, or was in public use, before the date of Johnson's application, problematical. As the proof stands the trials can only be regarded as experimental prior to an even later date.

[4] The tapering tone arm, which appears in the Miller reissue patent, cannot be regarded as anticipating that feature of the Johnson patent. The matters in interference did not relate to a tapering tone arm. The affidavits of Miller furnish the only evidence of the date of his conception, and his sketch, dated December 2, 1900, showing a talking machine with a tapering arm, does not establish that date by documentary evidence, for Miller does not state when the date was placed on the sketch. Moreover, the language of his specification nowhere describes or claims such an element as a tapering tone arm, but only shows a diagram of such an arm. There is no reason to suppose that this feature was a part of Miller's conception. I do not regard claim 37 of the Miller reissued patent, No. 12,963, as calling for a tapering tone arm. It is applicable to an amplifier having a tone arm either with parallel sides, as shown in Figure 4, or with tapering sides, as shown in Figure 1, and makes no claim to any special shape.

As for the Columbia defense, the date is too late. I think it clear that Johnson's conception was at least prior to the summer of 1902, and that dies were made and successful devices constructed, embodying his invention, during that summer, of the character of Exhibit 18. The Columbia device appears to have originated in Hinkley's sketch in October. This was rapidly followed by reduction to practice, but of a later date than Johnson, who proceeded steadily from the early summer of 1902 until he put his talking machine on the market in the spring of 1903, and filed the applications for his patents on February 12, 1903.

[5] On the whole case I hold all the claims in issue valid and infringed, except claim 36 of patent No. 814,786. That is not limited to a tapering tone arm. I regard it, therefore, as showing no invention over the Elfering or Johnson and Denison prior patents. The only modification of claim 36 in suit are obvious equivalents. Victor v. Edison, 229 Fed. 999, 144 C. C. A. 281; American Graphophone Co. v. Gimbel, 240 Fed. 971, 153 C. C. A. 657.

The complainant is entitled to an interlocutory decree, adjudging all the claims in issue, except 36, supra, valid and infringed, and providing for an injunction and an accounting. The suit as to claim 36 should be dismissed.